■ DKR SOUNDSHORE OASIS HOLDING FUND LTD., Appellant, v MERRILL LYNCH INTERNATIONAL et al., Respondents. [914 NYS2d 145]—

Judgment, Supreme Court, New York County (Barbara R. Kapnick, J.), entered April 16, 2010, dismissing the complaint, and bringing up for review an order, same court and Justice, entered April 14, 2010, which granted defendants' motion to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7), unanimously reversed, on the law, with costs, and the complaint reinstated. Appeal from the aforesaid order unanimously dismissed, without costs, as subsumed in the appeal from the judgment.

This appeal calls for an examination of the sufficiency of a notice issued pursuant to a credit default swap (CDS) derivative transaction. In a CDS a buyer makes periodic payments to a seller in exchange for the seller's credit protection in connection with the obligation of a third party. In the subject transaction, plaintiff DKR Soundshore Oasis Holding Fund Ltd. (Oasis) was the buyer and defendant Merrill Lynch International (Merrill International) the seller of credit protection against defined "credit events" relating to a certain debt obligation of Urban Corporation in the amount of JPY (Japanese yen) 1.5 billion. The parties' rights and obligations are governed by a standardized master agreement promulgated by the International Swaps and Derivatives Association, Inc.

This action stems from the novation to Oasis and Merrill International, respectively, of a CDS entered into by Riviera Holdings, as buyer, and Deutsche Bank AG, as seller. Pursuant to the initial transaction, Deutsche Bank would have been obligated to pay Riviera JPY 1.5 billion if before May 23, 2008, the contract's termination date, Urban experienced a credit event with respect to the subject debt obligation. One such credit event would have been the "[r]estructuring" of at least JPY 1 billion of Urban's unsubordinated debt. The agreement defined

a restructuring as, among other things, "a postponement or other deferral of a date or dates for either (A) the payment or accrual of interest or (B) the payment of principal or premium." Deutsche Bank's obligation to pay pursuant to the agreement was conditioned upon Riviera's delivery of a "credit event notice" (CEN) and a "notice of publicly available information" (NPAI).

On or about June 6, 2008, Riviera delivered to Deutsche Bank a combined CEN and NPAI along with an explanatory affidavit by Hidetoshi Seino, an analyst employed by Oasis, detailing what is claimed to be the triggering credit event. The initial transaction was novated to Oasis and Merrill International on or about June 12, 2008. Accordingly, on or about July 2, 2008, Oasis delivered to Merrill International a demand for payment set forth in a "notice of physical settlement." By letter of the same date, Merrill International asserted that Riviera's June 6, 2008 notice was invalid "insofar as a reasonable recipient of the notices would not be able to conclude from them that a Restructuring had occurred." Oasis brought this action upon Merrill International's refusal to make payment pursuant to the notice of physical settlement. The breach of contract cause of action and the claims for ancillary relief are based upon Merrill International's failure to settle the transaction pursuant to the notice of physical settlement. In support of their motion, defendants asserted that the purported insufficiency of Oasis's June 6, 2008 notices conclusively resolves all factual issues and thereby disposes of Oasis's claims as a matter of law. The motion court granted defendants' motion, finding the said notices insufficient. We now reverse.

In the affidavit accompanying the June 6, 2008 notices, Seino stated that he had learned from an officer of Urban that the company had successfully sought to restructure its obligations in excess of JPY 1 billion except for its debts to two banks. In rendering its decision, the motion court noted that the affidavit did not set forth the actual amount that Urban had successfully restructured, as distinguished from the amount sought to be restructured. Accordingly, the court found Oasis's CEN and NPAI deficient on the ground that they did "no more than pointedly raise a question as to whether the events that they purport to report had, in fact, taken place."

On a CPLR 3211 motion, the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994]). Moreover, a motion to

dismiss on the basis of a defense founded upon documentary evidence may be granted "only where the documentary evidence utterly refutes [the complaint's] factual allegations, conclusively establishing a defense as a matter of law" (*Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 326 [2002]). Accordingly, the sufficiency of the subject notices must be evaluated in light of the requirements of the agreement.

The agreement provided that a CEN "must contain a description in reasonable detail of the facts relevant to the determination that a Credit Event has occurred." Similarly, the required "Publicly Available Information" is that which "reasonably confirms any of the facts relevant to the determination that the Credit Event . . . has occurred." Hence, the standard of reasonableness must be applied to determine whether the CEN and the NPAI were in compliance with the agreement. "Reasonable" is defined as "[f]air, proper, or moderate under the circumstances" (Black's Law Dictionary 1293 [8th ed 2004]). The reasonableness of notice is not an issue that lends itself to determination on a CPLR 3211 motion (*see Zuckerwise v Sorceron Inc.*, 289 AD2d 114, 115 [2001]).

We also reject defendants' argument that the CEN was deficient because it did not recite the precise date on which the credit event occurred. As we must give Oasis the benefit of every possible favorable inference, we note that the agreement's notice provision does not call for the same precision set forth in its definition of a credit event. As one commentator has opined, even an inaccuracy would not necessarily invalidate a CEN "as long as it could subsequently be shown that a [credit event] had in fact occurred" (Firth, Derivatives: Law and Practice § 16-120). Concur—Tom, J.P., Andrias, Sweeny, DeGrasse and Román, JJ.