OPINION OF THE COURT
Carol Robinson Edmead, J.
This declaratory judgment action brought by the Association of Justices of the Supreme Court of the State of New York and current and retired members of the New York State judiciary challenges the constitutionality of the decision by the State of New York (defendant) to reduce the State’s contribution to the justices’ health insurance benefits.
Defendant now moves to dismiss the plaintiffs’ complaint on the ground that the complaint fails to state a cause of action *514 (CPLR 3211 [a] [7]) or, in the alternative, that its defense is founded upon documentary evidence (CPLR 3211 [a] [1]).
Factual Background
In early 2010, the Court of Appeals issued a decision in Matter of Maron v Silver (14 NY3d 230 [2010]), which addressed the issue of whether the legislature’s failure to make upward adjustments to the justices’ and judges’ compensation for more than 10 years violated the New York State Constitution’s Compensation Clause (art VI, § 25) and separation of powers doctrine.[1] After discussion of the goals of each, the Court of Appeals held that the legislature’s failure to consider judicial compensation on the merits violated the separation of powers doctrine, and urged the legislature to take “appropriate and expeditious” action to adjust the judiciary’s compensation.
Consequently, in 2010, the legislature enacted the act of December 10, 2010, chapter 567 (the Salary Commission Law), which created the Commission on Judicial Compensation (Commission) to examine, every four years, the “adequacy of pay levels and non-salary benefits” of justices and judges (L 2010, ch 567, § 1 [a] [i]). In the summer of 2011, the Commission held several meetings and a public hearing, and issued a final report on August 29, 2011 recommending judicial pay increases in three phases: (1) an increase to $160,000 on April 1, 2012, (2) an increase to $167,000 on April 1, 2013, and (3) an increase to $174,000 on April 1, 2014.[2]
During the pendency of the Commission’s study, and in an effort to address the budget crisis facing the State of New York, the legislature negotiated agreements with certain public sector unions impacting the State’s employees’ salaries and benefits. It was posited that instead of laying off thousands of state employees, in June 2011, the legislature agreed to, inter alia, a reduc *515 tion in the percentage of the State’s contribution toward employees’ health insurance premiums.[3]
And, instead of negotiating with thousands of unrepresented employees, in August 2011, the legislature amended Civil Service Law § 167 (8) to allow the president of the Civil Service Commission (with the approval of the State Budget Director) to extend the terms of the union agreement to unrepresented state employees and retirees.
On September 27, 2011, the Civil Service Department proposed to implement changes for those excluded from collective bargaining within the meaning of the Taylor Law, Civil Service Law article 14 (i.e., the plaintiffs).
On September 30, 2011, plaintiffs, for the first time, were notified of the reduction in the State’s contribution to their health insurance premiums, which would require them to pay more per year for their health insurance premiums. The State’s contribution rate change took effect on October 1, 2011, resulting in a 6% increase in plaintiffs’ contribution to the cost of their health insurance (such as co-payments, deductibles, and prescription drug costs). The premium contribution rate for retired justices increased by 2%, and the rate for those justices retiring on or after January 1, 2012 increased by 6%.[4]
Since the Commission’s recommendations were not modified or abrogated by the legislature or governor, the first of the three-phase judicial pay raise increases went into effect on April 1, 2012.
On or about December 26, 2012, plaintiffs commenced this proceeding to enjoin defendant from imposing the higher premium contribution rates, co-payments, and deductibles for health insurance.[5] Plaintiffs assert that since “compensation” includes health benefits, the value of their compensation has been diminished by defendant’s actions, in violation of the *516 Compensation Clause, which guarantees that plaintiffs’ compensation shall not be diminished during their term in office.[6]
In moving to dismiss the complaint, defendant sets forth the following arguments: (1) according to Federal Compensation Clause jurisprudence, which New York courts follow, the Compensation Clause permits broadly applicable laws that indirectly reduce the take home pay of judges in a nondiscriminatory manner that does not single out judges; section 167 (8) is akin to the “Medicare tax” upon federal employees which the Supreme Court held was permissible under the Federal Compensation Clause in United States v Hatter (532 US 557 [2001]); (2) the Commission considered “non-salary” benefits such as health insurance in its study, and the judicial salary increase which occurred six months after the change in contributions cured any violation of the Compensation Clause; (3) the express language of the Compensation Clause renders it inapplicable to the retired justices and judges; and (4) the John and Mary Doe plaintiffs should be dismissed from this proceeding, as there is no procedure that allows the use of “John Doe” for plaintiffs who are unknown, except in a class action suit, which has not been sought herein.
Defendant contends that the adoption of plaintiffs’ theory would lead to absurd, unworkable results if applied to other forms of benefits, such as reimbursement for travel expenses and other fringe benefits, and would prevent the defendant from, for example, switching health insurance plans that increased premiums costs, but lowered co-payments. Plaintiffs’ theory also ignores the long history of reductions in the State’s contribution rate toward health insurance costs. Further, the duly amended section 167 (8) enjoys a strong presumption of constitutionality, and plaintiffs cannot establish its unconstitutionality “beyond a reasonable doubt.”
In opposition, plaintiffs argue that courts have held that health benefits comprise part of judicial compensation. When defendant reduced its contribution to plaintiffs’ health care insurance, it directly increased the cost of plaintiffs’ health insurance, and such legislative action has been held by courts in *517 other jurisdictions as a direct reduction in judicial compensation. Further, while case law holds that the Compensation Clause does not prevent lawmakers from enacting generally applicable, nondiscriminatory taxes on judges’ compensation, such case law is distinguishable as section 167 (8) was imposed by the State as an employer (as opposed to the State as a sovereign), and section 167 (8) does not affect all residents of New York State or all state employees equally.
Further, defendant’s reduction is discriminatory and singles out judges. The increased contributions are not borne by all New York State residents, but imposed upon solely New York State employees and retired employees. Nor does section 167 (8) affect all employees of the State of New York. Indeed, plaintiffs did not receive the same benefits that represented state employees received. Thus, section 167 (8) is akin to the “Social Security tax” imposed upon federal judges, previously held to be unconstitutional by the United States Supreme Court in Hatter, quoted above. Plaintiffs are unrepresented and ineligible for collective bargaining and, thus, have been discriminated against within their class of state employees.
Additionally, that the legislature would not take such a measure to punish judges for unpopular decisions is inconsequential. The amendment imposes a new financial obligation on plaintiffs, while simultaneously bearing no relation to the purpose of the amendment, which was to avoid the layoffs of state employees. The budgetary justification is improper, and unsound, in that judges comprise less than 1% of the active state employees, and at the time of the negotiations, the Commission had taken into account the ability of the State to pay for the recommended increases. Reverting back to the contribution rate previously in effect is not “unworkable.”
Nor does the increase in judicial salaries cure the constitutional violation. The salary increase was never designed to remedy the reduction in the State’s contribution rate. The Commission did not consider the reduction, and was not ever informed of any contemplated reduction of health benefits applicable to the plaintiffs. It was not until September 27, 2011, after the Commission disbanded, that the Civil Service Department sought to apply the decrease in contributions to those employees excluded from collective bargaining. There is no evidence that the legislature considered the health insurance increase in its abstaining to modify or reject the Commission’s recommendations.
*518 Further, the Compensation Clause mandates that retired judges’ compensation cannot be diminished. The phrase “during the term of office for which he or she was elected” contained in the Compensation Clause must be interpreted as the period beginning on the date of a judge’s retirement. Otherwise, the inclusion of “a retired judge or justice” would be superfluous.
And, plaintiffs argue, the complaint sufficiently identified the John and Mary Doe plaintiffs as current and retired judges and justices of the Unified Court System, and a class action is unnecessary in a declaratory judgment action. Defendant knows the identity of each John and Mary Doe, and there is no prejudice to allowing the John and Mary Doe plaintiffs to remain in this action.
In reply, defendant argues that plaintiffs misinterpret applicable case law. Also, the State, in acting as the employer, does not provide health insurance to all New Yorkers, and thus, the appropriate class to assess whether the judges were singled out is all state employees. Further, section 167 (8) applies to all state employees not subject to a collective bargaining agreement. Even if 25% of the state employees are not subject to the reduced premium contribution rate, the judges are not singled out for disadvantageous treatment. And, the State’s proffered justification is consistent with the Compensation Clause objectives.
Further, whether the Commission was unaware of the reduced premium contribution rate when it made its recommendations is irrelevant; the legislature was aware of the reduced premium contribution rate when it implemented the judicial salary increase. Thus, any violation was cured by the judicial salary increase.
And, there is no legal authority to support plaintiffs’ claim that the “term of office” for a retired judge begins on the date of his or her retirement. Such an interpretation of the Compensation Clause goes beyond its purpose of promoting judicial independence because, once a judge retires, he or she is no longer susceptible to influence by the threat of a reduction in compensation. Nor is the phrase “term of office” superfluous, as it is intended to protect retired justices who have been appointed for continued service under Judiciary Law § 115.
Discussion
The court begins with the well established principle that in determining a motion to dismiss pursuant to CPLR 3211 (a) (7), *519 the court’s role is ordinarily limited to determining whether the complaint states a cause of action (Frank v DaimlerChrysler Corp., 292 AD2d 118 [1st Dept 2002]). The standard on such a motion is not whether the party has artfully drafted the pleading, but whether, deeming the pleading to allege whatever can be reasonably implied from its statements, a cause of action can be sustained (see Stendig, Inc. v Thom Rock Realty Co., 163 AD2d 46 [1st Dept 1990]; Leviton Mfg. Co. v Blumberg, 242 AD2d 205 [1st Dept 1997]). The pleadings must be liberally construed (see CPLR 3026), and the court must “accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory” (Nonnon v City of New York, 9 NY3d 825, 827 [2007]; Leon v Martinez, 84 NY2d 83, 87-88 [1994]).
Pursuant to CPLR 3211 (a) (1), a party may move for judgment dismissing one or more causes of action asserted against him on the ground that “a defense is founded upon documentary evidence.” A motion to dismiss on the basis of a defense founded upon documentary evidence may be granted “only where the documentary evidence utterly refutes [the complaint’s] factual allegations, conclusively establishing a defense as a matter of law” (DKR Soundshore Oasis Holding Fund Ltd. v Merrill Lynch Intl., 80 AD3d 448, 450 [1st Dept 2011], citing Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 326 [2002]). The test on a CPLR 3211 (a) (1) motion is whether the documentary evidence submitted “conclusively establishes a defense to the asserted claims as a matter of law” (Scott v Bell Atl. Corp., 282 AD2d 180, 183 [1st Dept 2001], citing Leon v Martinez, 84 NY2d 83, 88 [1994], supra; IMO Indus. v Anderson Kill & Olick, 267 AD2d 10, 11 [1st Dept 1999]). To be considered “documentary,” evidence must be unambiguous and of undisputed authenticity (Fontanetta v John Doe 1, 73 AD3d 78 [2d Dept 2010], citing Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3211:10 at 21 22; Philips S. Beach, LLC v ZC Specialty Ins. Co., 55 AD3d 493 [1st Dept 2008]).[7]
*520 Plaintiffs’ complaint essentially challenges the constitutionality of section 167 (8) as applied to plaintiffs. That is to say, the amendment of section 167 (8) is better analyzed through a wider lens: the alleged “trumping” of the New York State Constitution.
Article VI, § 25, the Compensation Clause, addresses the compensation of the plaintiffs and certain other judicial classifications, whose salaries are specified in Judiciary Law article 7-B (§ 220 et seq.).
Article VI, § 25 (a) and (b) of the New York State Constitution provide:
“a. The compensation of a judge of the court of appeals, a justice of the supreme court, a judge of the court of claims, a judge of the county court, a judge of the surrogate’s court, a judge of the family court, a judge of a court for the city of New York established pursuant to section fifteen of this article, a judge of the district court or of a retired judge or justice shall be established by law and shall not be diminished during the term of office for which he or she was elected or appointed. . . .
“b. Each judge of the court of appeals, justice of the supreme court, judge of the court of claims, judge of the county court, judge of the surrogate’s court, judge of the family court, judge of a court for the city of New York established pursuant to section fifteen of this article and judge of the district court shall retire on the last day of December in the year in which he or she reaches the age of seventy. Each such former judge of the court of appeals and justice of the supreme court may thereafter perform the duties of a justice of the supreme court, with power to hear and determine actions and proceedings, provided, however, that it shall be certificated in the manner provided by law that the services of such judge or justice are necessary to expedite the business of the court and that he or she is mentally and physically able and competent to perform the full duties of such office. Any such certification shall be valid for a term of two years and may be extended *521 as provided by law for additional terms of two years. A retired judge or justice shall serve no longer than until the last day of December in the year in which he or she reaches the age of seventy-six. A retired judge or justice shall be subject to assignment by the appellate division of the supreme court of the judicial department of his or her residence. Any retired justice of the supreme court who had been designated to and served as a justice of any appellate division immediately preceding his or her reaching the age of seventy shall be eligible for designation by the governor as a temporary or additional justice of the appellate division. A retired judge or justice shall not be counted in determining the number of justices in a judicial district for purposes of subdivision d of section six of this article.”
The dual purpose of the Compensation Clause and its federal counterpart[8] is “to promote judicial independence and ensure that the pay of prospective judges, who choose to leave their practices or other legal positions for the bench, will not diminish” (Matter of Maron v Silver, 14 NY3d 230, 250 [2010], supra). As explained by the Supreme Court of the United States, “the federal clause reflects the view that ‘ “[n]ext to permanency in office, nothing can contribute more to the independence of the judges than a fixed provision for their support” ’ — a view informed by a long history of abuses by the English crown both in England and the American Colonies” (Matter of Maron v Silver, 58 AD3d 102, 109-110 [3d Dept 2008], citing United States v Hatter, 532 US 557, 568 [2001], quoting Hamilton, Federalist No. 79; United States v Will, 449 US 200, 218 219 [1980]; OMalley v Woodrough, 307 US 277, 282 [1939]).
It is beyond cavil that “compensation” in the context of one’s employment constitutes more than mere wages. Indeed, the general consensus among the courts is that compensation includes wages and benefits, including health insurance benefits (see Roe v Board of Trustees of Vil. of Bellport, 65 AD3d 1211, 1211, 1212 [2d Dept 2009] [including, as “compensation,” “wages and benefits” in the context of the protection afforded *522 by the New York State Constitution’s separation of powers clause prohibiting a legislative body from reducing the compensation of a judge or justice serving in a constitutional court, and remitting the matter for a declaration that a village resolution “terminating the plaintiffs paid health care benefits is null and void as to the plaintiff during his current term in (judicial) office”]; see also Syracuse Teachers Assn. v Board of Educ., Syracuse City School Dist., 42 AD2d 73, 75 [4th Dept 1973], affd 35 NY2d 743 [1974] [“compensation may take the form both of cash wages and ‘fringe benefits’ ”]; Matter of Aeneas McDonald Police Benevolent Assn. v City of Geneva, 92 NY2d 326, 331 [1998] [stating, in the context of mandatory arbitration, that “(h)ealth benefits for current employees can be a form of compensation” and that “(h)ealth benefits (are) a form of compensation, and thus a term of employment”]; Walek v Walek, 193 Misc 2d 241, 246 [Sup Ct, Erie County 2002] [finding, in the context of determining assets subject to equitable distribution, that the health care benefits component of defendant’s retirement plan “represent compensation for past employment services rendered by defendant”]; Kahmann v Reno, 928 F Supp 1209 [ND NY 1996] [considering, in the context of gross back-pay, “wages, bonuses, vacation pay, and all other elements of reimbursement and fringe benefits such as pension and health insurance” as “forms of compensation”]; District of Columbia v Greater Washington Bd. of Trade, 506 US 125 [1992] [noting, in the context of workers’ compensation benefits, the corresponding reduction in one’s weekly wage as a result of the health insurance benefits one receives]). Health benefits are as much compensation, when the benefits are more critical and carry as much weight, as the salary itself.
In an analogous case in New Jersey, DePascale v State (211 NJ 40, 47 A3d 690 [2012]), the plaintiff, also a judge, challenged on constitutional grounds the State of New Jersey’s enactment of the Pension and Health Care Benefits Act (2011 NJ Laws, ch 78), that required all state employees, including judges, to contribute more towards their state-administered health benefits program. The constitutional provision at issue, similar to the one herein, provided, in article VI, section VI, paragraph (6) of the New Jersey Constitution, that justices and judges “shall receive for their services such salaries as may be provided by law, which shall not be diminished during the term of their appointment” (the No-Diminution Clause). Notably, notwithstanding the phrase “salaries” found in New Jersey’s No-Diminution *523 Clause, the New Jersey Supreme Court held that chapter 78 violated the New Jersey Constitution by diminishing the salaries of justices and judges during the terms of their appointments. After pointing out that “[n]o court of last resort — including the United States Supreme Court — has upheld the constitutionality of legislation of this kind,” the court explained that even though chapter 78 did not discriminate between justices and judges and other public employees, “the State Constitution does” (211 NJ at 43, 47 A3d at 692 [emphasis added]). “However artfully the State describes the effect of Chapter 78 — as either a direct or indirect diminution in salary — it remains, regardless of the wordplay, an unconstitutional diminution.” (211 NJ at 44, 47 A3d at 693.)
Likewise, while the amendment herein does not single out judges, the Compensation Clause singly protects judges from overly broad laws that have the direct effect of diminishing their compensation. Here, the diminishment has a unique impact upon the judiciary, not by virtue of any phraseology appearing on the face of the amendment, but by virtue of the fact that it diminishes the compensation the judiciary is guaranteed to receive. As pointed out by DePascale, contributions to health insurance benefits which are deducted from a judge’s paycheck are directly related to the amount of salary paid to a judge.
It has been held that the Compensation Clause does not guarantee against the downward effect of inflation on judicial compensation (Matter of Maron v Silver, 14 NY3d 230 [2010], supra), and the failure or neglect of the legislature to remedy the downward effect of inflation upon judicial compensation does not violate the Compensation Clause. However, the indirect diminishing effect caused by inflation is a far cry from a legislative, affirmative act resulting in the diminishment of health benefits of those whose compensation is guaranteed by the Constitution.
This conclusion is not contradicted by the United States Supreme Court decision in United States v Hatter (532 US 557 [2001], supra). In Hatter, the Court addressed whether two federal legislative rules violated the Federal Compensation Clause: the Medicare tax and special retroactivity-related Social Security rules (the Social Security tax).
The Medicare tax initially required American workers (whom Social Security covered), except for federal employees, to pay an additional tax as “hospital insurance.” Congress, believing that federal workers should bear their equitable share of the costs of *524 the benefits they also received, then amended the Medicare tax to extend to all currently employed federal employees and newly hired federal employees and, as such, required all federal judges to contribute a percentage of their salaries to Medicare. The Social Security law, on the other hand, was amended such that 96% of the then-currently employed federal employees were given the option to choose not to participate in Social Security, thereby avoiding any increased financial obligation. However, the remaining 4% were required to participate in Social Security while freeing them of any added financial obligation provided they previously participated in other contributory retirement programs. Thus, of those who could not previously participate in other contributory retirement programs, i.e., federal judges, their financial obligations and payroll deductions were increased.
After holding that the Federal Compensation Clause did not “forbid Congress to enact a law imposing a nondiscriminatory tax (including an increase in rates or a change in conditions) upon judges, whether those judges were appointed before or after the tax law in question was enacted or took effect,” the Medicare tax was held to be constitutional (id. at 571-572).
However, four aspects of the Social Security tax caused the Supreme Court to find that it discriminated against federal judges “in a manner that the Clause forbids” (id. at 572). Based on the class of federal employees to which the Social Security tax applied, the fact that it imposed a new financial obligation upon sitting judges but did not impose a new financial obligation upon any other group of federal employees, that the tax imposed a substantial cost on federal judges with little or no expectation of substantial benefit,[9] and the unsound nature of the government’s justification, the Social Security law violated the Compensation Clause.
The State’s withdrawal of its contributions which comprise compensation, which is essentially what section 167 (8) as applied to judges accomplishes, stands upon different footing than a nondiscriminatory, generally applied tax imposed against the compensation of all citizens by the government in its status as a sovereign (see Robinson v Sullivan, 905 F2d 1199, 1202 [8th Cir 1990] [“the duty to pay taxes, shared by all citizens, does not diminish judges’ compensation within the meaning of the *525 Compensation Clause. Likewise, social security retirement insurance benefits are earned and paid as part of a general social welfare plan and not specifically as judicial compensation” (emphasis added)]).
Further, the increased contributions required by section 167 (8) do not apply to all New York State residents, as was the case with the Medicare tax in Hatter. More importantly, while the terms of the agreement giving rise to plaintiffs’ increase in contributions were negotiated between the State and the union, plaintiffs are unrepresented, and not eligible for collective bargaining, and were, like the judges affected by the Social Security tax in Hatter, left without a choice and required to contribute. That the legislature did not single out judges for special treatment in order to influence them is thus irrelevant (see Hatter, 532 US at 577).
Moreover, defendant negotiated its reduction in contributions in order to avoid the layoffs of thousands of state employees, none of which include judges or justices, because judges and justices are not subject to “layoffs.” Thus, the increased cost of health insurance borne by plaintiffs bears no relation to the purpose of the State’s reduction in its contributions.
Additionally, defendant points out that only 75% of active state employees are subject to the reduced premium contribution rate. Like the Social Security tax, section 167 (8) imposes an additional financial burden upon judges, who received different treatment than other state employees who were either represented during the collective bargaining negotiations or otherwise exempt from the reduced premium contribution rate.[10]
Therefore, it cannot be said that the plaintiffs failed to state a claim, or that the documentary evidence establishes a defense to the claim that section 167 (8) violates New York’s Compensation Clause as applied to plaintiffs.
The defendant’s argument that the violation was cured lacks merit. It strains credulity to posit that a 12-year awaited increase should offset an increase to the judges’ contribution toward their health benefits no matter how “minor” the health care contributions. Defendant ignores that the judiciary had not *526 received any wage increase for more than 10 years, which, according to plaintiffs, resulted in a loss of approximately $500 million in their purchasing power since 1999 (mem of law in opposition at 13 n 4). And, the reduction in defendant’s contribution rate is not de minimis, given the disparity in income judges have faced since 1999, in comparison with their federal counterparts. Nor is there any support in the law for “offset reasoning.” As explained by the United States Supreme Court in Hatter, “how could we always decide whether a later salary increase terminates a constitutional violation without examining the purpose of that increase?” (Hatter, 532 US at 578.) Here, the Commission considered several factors in making its final recommendations, including, but not limited to: the overall economic climate; rates of inflation; changes in public-sector spending; the levels of compensation and non-salary benefits received by professionals in government, academia and private and nonprofit enterprise; and the State’s ability to fund increases in compensation and non-salary benefits (final report at 4). However, there is no indication that the Commission considered or anticipated any decrease in the State’s contribution toward the judge’s health care benefits in its study. Therefore, it cannot be said that the judicial salary increase “sought ‘to make whole the losses sustained’ ” by the State’s application of section 167 (8) to the judges (see Hatter, 532 US at 579).
As to dismissal of the action as against the retired plaintiffs, it bears repeating that the Compensation Clause expressly protects the compensation of a “retired judge,” providing that
“[t]he compensation of a judge . . . established pursuant to section fifteen of this article, a judge of the district court or of a retired judge or justice shall be established by law and shall not be diminished during the term of office for which he or she was elected or appointed.” (Emphasis added.)
This court is well aware that a statute or ordinance is to be construed as a whole, reading all of its parts together to determine the legislative intent and to avoid rendering any of its language superfluous (Matter of Erin Estates, Inc. v McCracken, 84 AD3d 1487, 1489 [3d Dept 2011], citing Friedman v Connecticut Gen. Life Ins. Co., 9 NY3d 105, 115 [2007]). “It is an accepted rule that all parts of a statute are intended to be given effect and that a statutory construction which renders *527 one part meaningless should be avoided” (Rocovich v Consolidated Edison Co., 78 NY2d 509, 515 [1991], citing Matter of Albano v Kirby, 36 NY2d 526, 530 [1975]).
Initially, defendant moved to dismiss the plaintiffs’ complaint as to the retired justices relying on two sections, article VI, §§ 25 (a) and 6 (c), arguing that “during the term of office” does not apply to retired judges because a justice’s term of office ends when he or she retires. Upon such retirement, he/she is no longer to be included in the protection of the Compensation Clause’s no-diminution guarantee as the justice no longer has a term of office.
Plaintiffs then responded that such an interpretation would render the inclusion of “a retired judge or justice” superfluous.
In reply, defendant then proffered an explanation why the terms “retired judge” and “during the term of office” are not incongruous. Defendant posits that “during the term of office” renders the no-diminution guarantee applicable to those judges who have obtained a two-year appointment upon certification pursuant to Judiciary Law § 115 (1) and (2).
To begin, defendant’s modified argument with respect to “retired judge” raised for the first time, in reply, is improper. Arguments raised for the first time in reply are not to be considered (Wal-Mart Stores, Inc. v United States Fid. & Guar. Co., 11 AD3d 300 [1st Dept 2004]; Alrobaia v Park Lane Mosholu Corp., 74 AD3d 403, 404 [1st Dept 2010] [“The argument on which the court relied, however, was raised for the first time in defendants’ reply papers, and should not have been considered by the court in formulating its decision”]). As the First Department explained in Dannasch v Bifulco (184 AD2d 415, 417 [1st Dept 1992]): “The function of reply papers is to address arguments made in opposition to the position taken by the movant and not to permit the movant to introduce new arguments in support of, or new grounds for the motion.” And, plaintiffs were not given an opportunity to submit a surreply (Apartment Recycle Co. of Manhattan Inc. v AIU Ins. Co., 10 Misc 3d 1066[A], 2005 NY Slip Op 52178[U], *4-5 [Sup Ct, NY County 2005], citing Fiore v Oakwood Plaza Shopping Ctr., 164 AD2d 737, 739 [1st Dept 1991], affd 78 NY2d 572 [1991], cert denied 506 US 823 [1992] [“The First Department, however, has carved out a narrow exception to the maxim excluding arguments advanced in a movant’s reply papers: where the opposing party ‘availed themselves of an opportunity to oppose the claims in their surreply,’ the movant’s arguments may be considered on their merits”]).
*528 For the defendant in reply to now present a “new and improved” explanation of what is meant by “retired” and “during the term of office” diminishes the sufficiency of their original position. Second, there is no support offered for this new interpretation. Third, on its face, the language says “retired,” and defendant supplied no legislative history to support its interpretation. Finally, had the legislature intended to limit the Compensation Clause’s guarantee against diminution to retired judges who have been recertified for continued service pursuant to Judiciary Law § 115 (1) and (2), “it could have chosen to do so through appropriately worded legislation” (Eaton v New York City Conciliation & Appeals Bd., 56 NY2d 340, 346 [1982]; see also art VI, § 25 [b]).
Therefore, the basis for dismissal as against the retired judges is unsupported.
However, plaintiffs failed to assert a legally cognizable basis to permit the John and Mary Doe plaintiffs to remain in the action. CPLR 1024, entitled “Unknown parties,” allows a “party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, [to] proceed against such person as an unknown party by designating so much of his name and identity as is known.” (Emphasis added.) Thus, the use of the John Doe caption is permitted where a party is ignorant of the name or identity of its adversary, a circumstance not present herein. It is also noted that “CPLR 1024 does not govern the separate issue whether a John Doe pseudonym may be used to conceal the plaintiffs identity,” which still does not assist the unidentified plaintiffs herein, since the “use of a pseudonym must be reserved for cases in which the matter alleged implicates ‘a privacy right so substantial as to outweigh the customary and constitutionally embedded presumption of openness in judicial proceedings,’ ” a situation also not present herein (Vincent C. Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 1024, citing “J. Doe No. 1” v CBS Broadcasting Inc., 24 AD3d 215, 215 [1st Dept 2005]). Nor did plaintiffs request class action status.[11] And, that defendant is aware of the names and addresses of each and every John and Mary Doe is of no moment. *529 There is no basis to permit the caption to remain in its state without a showing of a substantial privacy right or class certification status. Therefore, plaintiffs “John and Mary Does 1-2,000, current and retired judges and justices of the Unified Court System of the State of New York,” are dismissed from this action, without prejudice.
In conclusion, this court does not live in an ivory tower, and is fully familiar with the financial crisis that New York, like most of the other states in the country, is facing. As pointed out by defendant, the State faced a budget deficit of $10 billion for the 2011-2012 year, forcing the legislature to make difficult choices between preserving jobs or reducing benefits. However, accepting as true the allegations of the complaint, section 167 (8) constitutes an unconstitutional intrusion as applied to the judiciary, whose compensation is guarded by the Compensation Clause. Finally, it is hoped that this court’s ruling does not signal a green light to the legislature to revisit pre-Commission levels of judicial compensation or “offset” the impending 2014 scheduled salary increase.
Conclusion
Based on the foregoing, it is hereby ordered that defendant’s motion to dismiss the plaintiffs’ complaint on the ground that the complaint fails to state a cause of action (CPLR 3211 [a] [7]) or, in the alternative, that its defense is founded upon documentary evidence (CPLR 3211 [a] [1]) is denied, except that the John and Mary Does 1-2,000, current and retired judges and justices of the Unified Court System of the State of New York, are dismissed from this action, without prejudice.

. “The doctrine of separation of powers is implied by the separate grants of power to each of the coordinate branches of government. Article III, § 1 of our Constitution provides: ‘The legislative power of this state shall be vested in the senate and assembly’, and article iy § 1 provides in pertinent part that ‘[t]he executive power shall be vested in the governor’ ” (Clark v Cuomo, 66 NY2d 185, 189 [1985]).
Article VI provides for a “unified court system for the state.”

. Under the Salary Commission Law, the Commission’s recommendation are effective automatically unless the legislature and governor enact a statute by April 1 of the following year to modify or reject the recommendations.

. The State’s contributions were reduced from 90% to 80% for active employees, and from 90% to 88% for retired employees, thus requiring the employees to pay the difference with their salaries.

. However, the co-payment for judges, justices, and unrepresented Unified Court System employees and retirees was eliminated for certain preventative care services, and the co-payment for certain prescription drugs was reduced by 50%.

. Plaintiffs seek a judgment declaring that
“L 2011, c. 491, § 2 and the amended Civil Service Law § 167.8 are unconstitutional as applied to the Judges and Justices of the Unified Court System because these statutes diminish the *516 compensation of all such Judges and Justices and, by so doing, unconstitutionally and adversely impact the public and independence of the Judiciary . . . .”

. According to the complaint, this provision includes retirement benefits afforded to retired judges and justices.

. Defendant’s reliance on LaValle v Hayden (98 NY2d 155 [2002]) for the proposition that plaintiffs must establish the statute’s invalidity “beyond a reasonable doubt” is misplaced. In LaValle, the Court of Appeals was faced with addressing the propriety of an order which granted defendants summary judgment dismissing the complaint, where defendants moved for dismissal pursuant to CPLR 3211 and the plaintiffs cross-moved for summary judgment *520 on their claim that certain provisions in the Education Law were unconstitutional. Here, a motion attacking the sufficiency of the complaint, or premised on a defense based on documentary evidence, does not trigger the much higher standard required of a motion for summary judgment.

. The “state provision is comparable to the Federal Compensation Clause (US Const, art III, § 1) which also contains the same ‘shall not be diminished’ language” (Matter of Maron v Silver, 14 NY3d at 252): “The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.”

. It was noted that participation in Social Security by judges would only benefit a minority of them who had not worked the 40 quarters necessary to be fully insured (id. at 573).

. While defendant cites case law to show that countless similar laws were passed by the legislature, the case law cited did not address the impact of the legislative decisions upon the judiciary branch and did not address the Compensation Clause in any manner (see Matter of Retired Pub. Empl. Assoc., Inc. v Cuomo, 2012 NY Slip Op 32979[U] [Sup Ct, Albany County 2012] [trial order]).

. CPLR 901 provides:
“Prerequisites to a class action
“a. One or more members of a class may sue or be sued as representative parties on behalf of all if:
*529 “1. the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;
“2. there are questions of law or fact common to the class which predominate over any questions affecting only individual members;
“3. the claims or defenses of the representative parties are typical of the claims or defenses of the class;
“4. the representative parties will fairly and adequately protect the interests of the class; and
“5. a class action is superior to other available methods for the fair and efficient adjudication of the controversy.”