■ LEVITON MANUFACTURING Co., INC., Appellant-Respondent, v THOMAS BLUMBERG et al., Respondents-Appellants, and BERNARD L. BLUMBERG et al., Respondents. [660 NYS2d 726] —Judgment, Supreme Court, New York County (Charles Ramos, J.), entered January 10, 1997, granting defendants' motions to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7), collectively, unanimously reversed, on the law, with costs and disbursements, the motions denied and the complaint reinstated.

The Blumberg family owned 29% of the stock of Leviton Manufacturing Co., Inc., a closely held Delaware corporation that manufactures electrical supplies. Thomas Blumberg was a Vice-President of Marketing and Sales and a member of the executive committee; his wife, Elaine, was a member of Leviton's board of directors. Since 1965, Leviton has been headed by Harold Leviton, son of the firm's founder. He and his wife own the remaining 71% of Leviton stock. Beginning sometime before early 1993, representatives of Thomas and Betts Corporation (T&B), incorporated in New Jersey, based in Tennessee and qualified to do business in New York and whose shares are publicly traded, approached Leviton officials in an attempt to purchase Leviton stock for T&B. Although nothing came of these discussions, T&B made no secret of its desire to gain a controlling interest in Leviton. In 1993, Mr. Blumberg approached T&B about selling his Leviton stock. It is undisputed that these dealings were not disclosed to Mr. Leviton.

In its complaint, Leviton alleges that Blumberg and T&B intentionally kept their dealings a secret to prevent a cut-off of Blumberg's access to internal Leviton documents. It is alleged that documents and information, of a confidential nature, and essential to T&B's evaluation of the proposed transaction, were disclosed to T&B pursuant to a confidentiality and indemnification agreement between Blumberg and T&B. The disclosures allegedly included audited financial statements of Leviton's two main subsidiaries, which were obtained, on a confidential basis, by Elaine Blumberg, as a director, without disclosing her husband's dealings with T&B. Other confidential documents, including purely internal financial documents and strategic planning documents, were also allegedly disclosed. The Blumbergs are alleged to have similarly obtained information from

Leviton's accountants. During this period, Blumberg and his financial advisor, acting as legal counsel, negotiated compensation and dividend issues with Leviton, allegedly for the hidden purpose of valuing the Blumberg holdings. Eventually, on July 12, 1994, in a formal stock purchase agreement, the Blumbergs agreed to sell T&B their entire 29% interest in Leviton for $50.6 million; an additional $20 million bonus would be paid to the Blumbergs if and when T&B gained control of Leviton. The sale was accomplished, in part, by a transfer of 90 shares from Elaine Blumberg to the Blumberg children who would then become the nominal sellers of these shares. Earlier, in June 1994, Blumberg learned that T&B sales personnel were spreading the story that T&B was going to be "taking over" Leviton. Concerned that Leviton might learn of their negotiations before execution of the stock purchase agreement, Blumberg and T&B president, Moore, agreed that Blumberg would send a letter to Moore demanding that he take steps to squelch the rumors. A copy of this letter was delivered to Mr. Leviton. Leviton claims that, had it known of Blumberg's duplicity, it could have ended the Blumbergs' access to the corporation's information, offered to buy all of the Blumberg family shares, taken steps to "cash out" the Blumberg family shares pursuant to Delaware law or sought injunctive relief against the Blumberg/T&B transaction. It is uncontroverted that Blumberg was fired when the sale to T&B became known.

Ultimately, T&B's attempt to obtain control over Leviton failed and it remains "locked in" as a minority shareholder. In the course of its efforts to wrest control, T&B sued in Delaware's Court of Chancery pursuant to that State's mandatory corporate inspection statute (Del Code Annot, tit 8, § 220), seeking access to a host of Leviton's documents and meeting with only limited success. (See, *Thomas & Betts Corp. v Leviton Mfg. Co.*, 685 A2d 702, *affd* 681 A2d 1026 [Del].) The Delaware court found that the confidential financial information furnished by Blumberg regarding Leviton and its operations was used by T&B to determine the price it was willing to pay for the Blumberg shares. The court allowed inspection of the shareholder lists so that T&B could explore the possibility of acquiring their shares or selling them its shares, as well as production of Leviton's books and records. On the other hand, the Delaware court rejected T&B's claim that it needed greater inspection to investigate waste and mismanagement within Leviton, finding such purpose to be at odds with the corporation's interest. The court granted T&B three-year access to Leviton's audited financial statements, as well as those of its subsidiaries and Leviton's tax returns for the same period.

In its complaint herein, Leviton, emphasizing the trial court's findings in the Delaware action that the purpose of T&B's acquisition was to gain eventual control of Leviton and that its "initial primary purpose in seeking a books and records inspection was not to value its minority shareholdings, but, rather, to exert pressure on Harold Leviton to negotiate a sale of his controlling interest or, alternatively, the entire company" (685 A2d, *supra,* at 713; *see also,* 681 AD2d, *supra,* at 1033), charged that the Blumbergs, aided and abetted by T&B, breached their fiduciary duty to it by providing confidential information to T&B, deceiving Leviton and "exploiting their access to confidential Leviton information in order to sell their Leviton shares at an otherwise unobtainable premium." Without joining issue, the Blumberg defendants moved to dismiss the complaint pursuant to CPLR 3211 (a) (7). T&B cross-moved for the same relief under CPLR 3211 (a) (1) and (7). The IAS Court found, *inter alia,* that Elaine Blumberg had obtained confidential documents as a shareholder, not as a director, and that Blumberg, based on his intention to sell the family's shares, used the documents and information for a proper purpose, i.e., to allow T&B to determine the value of the Blumberg shares. It also found that Leviton's right to maintain privacy did not outweigh the Blumbergs' right to access. Accordingly, it dismissed the complaint. We reverse.

Since this litigation concerns the internal affairs of a Delaware corporation, the fiduciary duty issues should be governed by Delaware law. (*See, e.g., Lama Holding Co. v Smith Barney,* 88 NY2d 413, 423.) "[N]o hard and fast rule can be formulated" as to whether a fiduciary acts honestly, in good faith and with loyalty, but the rule that requires a corporate fiduciary's duty to so act is "uncompromising in its rigidity." (*Guth v Loft, Inc.,* 25 Del Ch 255, 270, 5 A2d 503, 510.) The controlling majority must treat the minority shareholders fairly. (*See, Garza v TV Answer,* 1993 Del Ch LEXIS 40, 13-14 [Del Ct Ch, Mar. 11, 1993, Hartnett, Ch].) While a voting minority must be treated fairly, it is not entitled to any special protections. (*See, Nixon v Blackwell,* 626 A2d 1366, 1380-1381 [Del].) The valuation of a significant minority shareholder's stock in anticipation of a sale is a proper basis for inspection of books and records under Delaware law (*see, CM & M Group v Carroll,* 453 A2d 788, 793 [Del]); once established, any ulterior purpose is irrelevant (*see, Radwick Pty., Ltd. v Medical, Inc.,* 1984 WL 8264, 10 Del J Corp L 290 [Del Ct Ch, Nov. 7, 1984, Berger, Ch]; *see also, Helmsman Mgt. Servs. v A & S Consultants,* 525 A2d 160, 164 [Del]). Generally, absent an agreement providing otherwise, shareholders have the right to sell their shares to whomever

they wish. (*See, Cahill v Green*, 1984 WL 8246, 10 Del J Corp L 155 [Del Ct Ch, Nov. 8, 1984, Hartnett, Ch].) The preservation of family ownership is, as argued by Leviton, permissible if in furtherance of the independent good of the corporation itself. (*See, Williams v Geier*, 671 A2d 1368, 1377 [Del].) Contrary to the implications of Leviton's argument, the interests of the controlling shareholder are not necessarily the interests of the corporation. In the corporate world, the adage, "What is good for the family is good for the company" is not always a valid prescription.

On a CPLR 3211 (a) (7) motion for dismissal for failure to state a cause of action, the court is required to accept factual allegations as true (*see, McGill v Parker*, 179 AD2d 98, 105). Here, it is alleged that the Blumberg disclosures to T&B included not merely certain discretely identified documents, but internal Leviton information as well. The documents included internal management reports with financial and operating data, expense details, information on personnel and assets and strategic planning documents. The complaint also alleges that Blumberg orally disclosed confidential data to T&B. Blumberg's right to disclose without violating his fiduciary duty was limited to those documents that were essential and sufficient for valuing the Blumberg stock. Based on our review of the record, it was error for the IAS Court to conclude, as a matter of law, that the Blumbergs disclosed only that which they were permitted to disclose under Delaware law. Leviton's claim that the Blumbergs breached their fiduciary duty to it by using their fiduciary positions to obtain confidential information and disclose it to a prospective buyer whose paramount interest was a takeover of Leviton should not have been summarily rejected. A shareholder cannot pursue his own interests in a manner directly adverse to the interests of the corporation. (*See, Compaq Computer Corp. v Horton*, 631 A2d 1, 4 [Del].) Nor, on this record, can it be said, as argued by the Blumbergs, that they have not realized a profit as a result of any breach of their fiduciary duty. Accordingly, the motions to dismiss pursuant to CPLR 3211 should have been denied. The complaint is reinstated. Concur—Sullivan, J. P., Rosenberger, Wallach, Rubin and Tom, JJ.